Paul C. Echo Hawk (ISB # 5802)
Matthew S. Echo Hawk (ISB # 7048)
ECHO HAWK LAW OFFICES
505 Pershing Avenue
P.O. Box 6119
Pocatello, Idaho 83205-6119
Telephone: (208) 478-1624
Facsimile: (208) 478-1670
Email: paul@echohawk.com
Email: matt@echohawk.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION, | Case No.: 4:10-CV-4-BLW |
| Plaintiff, | |
| vs. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; AND UNITED STATES BUREAU OF LAND MANAGEMENT, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants, | |
| And | |
| J.R. SIMPLOT COMPANY | |
| Defendants-Intervenors, | |

## TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………..2

INTRODUCTION ……………………………..……………………………...3

ARGUMENT ……………………………………………………………..…..3

STANDARD OF REVIEW …………………………………………………..3

I.     NEPA VIOLATION …………………………………………………..5

       A.     The BLM Erred in Failing to Perform an EIS ……………………..5

       B.     The BLM Failed to Adequately Consider Cumulative Impacts ……6

II.    FLPMA VIOLATION ………………………………………………..8

III.   BREACH OF TRUST RESPONSIBILITY …………………………..9

       CONCLUSION ……………………………………………………...11

## INTRODUCTION

COMES NOW Plaintiff Shoshone-Bannock Tribes ("Tribes") by and through their attorneys of record, EchoHawk Law Offices, and submits this memorandum in opposition to the Federal Defendants' Motion for Summary Judgment.

## ARGUMENT

### I. STANDARD OF REVIEW

#### A. *Administrative Procedures Act*

In the Ninth Circuit, courts have clarified the standards of review to apply when reviewing an agency decision under the APA. A federal court "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] ... (D) without observance of procedures required by law." 5 U.S.C. § 706(2). See *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1211 (9th Cir. 1998). "An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of the problem, if the agency offers an explanation that is contrary to the evidence, ... or if the agency's decision is contrary to the governing law. 5 U.S.C. § 706(2)." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005). The agency's decisions must be "fully informed and well-considered." *Save the Yaak Committee v. Block,* 840 F.2d 714, 717 (9th Cir. 1988).

Federal Defendants argue that this Court must defer to agency expertise where highly technical matters are involved that are within the purview of the agency, citing *Anderson v. Evans* and *Lands Council v. McNair*. The court in *Anderson* tempered such deference: "Although the court must defer to an agency conclusion that is fully informed and well-considered, it need not rubber stamp a clear error of judgment." *Anderson v. Evans*, 350 F.3d

815, 829 (9th Cir. 2003). The court in *Lands Council* reserved such deference to agencies when the agency is "making predictions, within its [area of] special expertise, at the frontiers of science." However, that case dealt with the Forest Service's decision concerning logging, an area that is squarely within the area of expertise of the Forest Service. The BLM's area of special expertise is not the environmental consequences of a proposed gypsum stack, nor is it the potential cumulative impacts from the addition of another gypsum stack next to a gypsum stack that is a current source of contamination to such a degree that the site is classified as a Superfund site under the Comprehensive Environmental Response, Compensation, and Liability Act (Superfund) and on the National Priority List. BR 321. A review of the record in this case, even with appropriate deference to the agency, shows that the BLM acted arbitrarily and capriciously by failing to adequately consider important aspects of the problem.

The Ninth Circuit has considered more specifically what is required under NEPA and the APA when a court is reviewing an agency's decision to not conduct an EIS. *Tillamook Cty. v. U.S. Army Corps of Engineers* states that the court reviews an administrative agency's decision not to prepare an EIS to assure that the decision was not arbitrary and capricious, and to determine whether the "agency has taken the requisite hard look at the environmental consequences of its proposed action," and has conducted a "reasoned evaluation of the relevant factors." 288 F.3d 1140, 1143 (9th Cir. 2002). Additionally, that case states that NEPA requires agencies to prepare an EIS for all major federal actions "significantly affecting the quality of the human environment." *Id.* A review of the BLM's decision in this case shows that it failed to recognize both the significance and the potential foreseeable effects of the proposed land exchange, such that substantial questions remain regarding effects on the environment.

## II. VIOLATION OF NEPA

### A.  *The BLM Erred in Failing to Perform an EIS*

Federal Defendants argue that Plaintiff has the burden of proof to establish that the BLM's NEPA analysis is inadequate, and that Plaintiff has not proven this. *Def's Memo at pg. 10*. In support, they rely on *Monroe County Conservation Council, Inc. v. Adams* and *Inland Empire Public Lands Council v. U.S. Forest Serv.*, both of which involve review of an agency decision *after an EIS has already been prepared*. This is simply not applicable to the present case, where Plaintiffs are challenging the agency decision at a much earlier step in the NEPA process. More recent cases, and cases in this circuit, describe Plaintiff's obligation when challenging an agency decision to forego an EIS and end NEPA procedures with an EA and FONSI.

When challenging an agency decision under NEPA, a plaintiff seeking to show that an agency should have prepared an EIS instead of a FONSI "need not demonstrate that significant effects *will* occur," but rather must show only that "there are *substantial questions* whether the project may have a significant effect of [sic] [on] the environment." *Western Land Exchange Project*, 315 F.Supp.2d at 1087, quoting *Anderson v. Evans*, 350 F.3d 815, 831 (9th Cir. 2003) (emphasis in original). If the Plaintiff has alleged facts, which, if true, show that the proposed project may significantly degrade some human environmental factor, the standard for preparing an EIS has been met. *Sierra Club v. US Forest Service*, 843 F.2d 1190, 1193 (9th Cir. 1988). A determination that significant effects on the human environment will in fact occur is not essential. *Id.* If substantial questions are raised whether a project may have a significant effect upon the human environment, an EIS must be prepared. *Id.*

The record in this case shows that substantial questions remain whether the proposed exchange *may* have a significant effect on the environment. The parties do not dispute that there are known environmental hazards at the Superfund site which includes the selected exchange lands. The record makes it fairly obvious that the purpose of the proponent is to expand gypsum storage activities on the selected lands. BR 381, 413, 2417. The EA acknowledges the possibility that "that punctures or seam seepage could occur that would allow some impact to groundwater." BR 340. The proponent's own information, filed with its Motion to Leave to Submit Supplemental Information on Remedial Considerations, regarding remedial liners demonstrates that further phosphorus contamination of the Portneuf River is expected in the future. Dkt 48, pg. 4. Furthermore, proponent's information indicates that the EPA determined that contaminant releases of greater significance than it had recognized in the 1998 ROD are ongoing at the facility. *Exhibit A – Declaration of Alan Prouty, pg. 7, 27*. The plaintiff has, for several years, brought numerous concerns to the BLM about the location, context, intensity, controversy, uniqueness, and uncertainty related to the effects of the land exchange; these are all factors that must be considered when determining whether an action is significant. BR 2379-83. 40 CFR § 1508.27(a)-(b). Given these and other concerns in the agency's record, there are substantial questions whether significant effects may occur, and the Plaintiff need not prove that they actually will occur.

    B.    *The BLM Failed to Adequately Consider Cumulative Impacts*

Federal Defendants argue that the agency's analysis in the EA of cumulative impacts is sufficient, and that plaintiff has failed to show how cumulative impacts of the action would occur. Both of these arguments misapprehend NEPA's cumulative impacts requirement, with regard to both the substance of the analysis and the burden that is required. Defendants rely on

*League of Wilderness Defenders Blue Mountains Biodiversity Project v. Allen* to justify the BLM's failure to provide a detailed cumulative analysis of past, present, and future projects and analyze how these projects are thought to have impacted the environment, even though the BLM did not purport to use the "aggregate effects" approach in the EA. No. 09-35094, 2010 WL 3194619. More importantly, however, the Defendants' reliance on that case is misplaced because, again, the court was reviewing an agency action *after an EIS had been prepared*, unlike the present challenge to an agency's decision to skip the EIS. The controlling Ninth Circuit case specifically addressing whether an EA's cumulative impacts analysis is sufficient is *Te-Moak Tribe v. USDOI*, Case No. 07-16336, 9000 (9th Cir. 2010).

In *Te-Moak,* the court discussed what is required when a plaintiff raises a challenge to a cumulative impacts analysis in an agency EA under NEPA. The burden that is imposed on Plaintiff is not an onerous one. The court has declined to impose a greater burden, noting that "the [Defendants] failed first; they did not properly describe other area projects or detail the cumulative impacts of these projects." *Id.* The Court continued:

> We conclude that in order for Plaintiffs to demonstrate that the BLM failed to conduct a sufficient cumulative impact analysis, they need not show what cumulative impacts would occur. To hold otherwise would require the public, rather than the agency, to ascertain the cumulative effects of a proposed action. *See id.* Such a requirement would thwart one of the "twin aims" of NEPA-to "ensure[ ] that the *agency* will inform the *public* that it has indeed considered environmental concerns in its decisionmaking process." *Id.*

The Plaintiff must only show the potential for cumulative impacts. *Id.*

The time to prepare an EIS is now, before the BLM loses any determination of what is done with the lands. The purpose of an EIS is to inform decisionmakers of the disruptive

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

environmental effects that may flow from their decisions when they retain a maximum range of options. *Conner v. Burford*, 848 F.2d 1441 (9th Cir. 1988) (citing *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983). NEPA is to help ensure that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). An EIS must be prepared before any irreversible and irretrievable commitment of resources. *Conner*, 848 F.2d at 1446. The Court in *Friends of Se.'s Future* added that an agency action constitutes an "irreversible and irretrievable commitment of resources" when the government no longer retains the "absolute right" to control the resources in question. *Friends of Se.'s Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir. 1998). In this case, once the BLM transfers the land, the government will no longer retain the "absolute right" to control the land and ensure NEPA protections.

III. VIOLATION OF FLPMA

Because the BLM has not complied with the requirements of NEPA by taking a "hard look" and adequately considering foreseeable cumulative effects as discussed above, it cannot have acted in the public's interest in compliance with its duty to protect public lands and it therefore has violated the FLPMA. In order to weigh the value of the proposed exchange to the public interest, the agency should carefully consider several factors in light of current and thorough study of the lands in question. As discussed previously, the agency failed to conduct groundwater studies on the selected lands, which are near to water sources important to the public. It did not consider likely foreseeable impacts of continued pollution to air, soil, and water, especially when combined with the known existing pollution problems. BR 332. While the agency did weigh the relative values for wildlife and recreational use, it failed to consider the

most glaring impact of the exchange—a Superfund site, which is of such public concern to be on the National Priorities List, will proceed with its long-held plans to expand its operations even closer to local communities and resources, all without the careful, thorough environmental studies that an EIS would provide and that the public deserves.

IV. BREACH OF TRUST RESPONSIBILITY

Similarly, where the BLM has failed to comply with and enforce federal environmental regulations, as previously discussed, which would directly and negatively impact the plaintiff Tribes, the Federal Defendants have breached their trust responsibility toward the Tribes. In *Navajo Tribe of Indians v. United States*, the Court of Claims reiterated the importance of the trust responsibility to federal agencies:

> We have noted, with great frequency, that the federal government is the trustee of the Indian tribes' rights, including fishing rights. See, e.g., Joint Bd. of Control v. United States, 862 F.2d 195, 198 (9th Cir. 1988). This trust responsibility extends not just to the Interior Department, but attaches to the federal government as a whole. This does not mean, however, that all the rules governing the relationship between private fiduciaries and their beneficiaries and accountings between them necessarily apply in full vigor in an accounting claim by an Indian tribe against the United States . . . . In each situation the precise scope of the fiduciary obligation of the United States and any liability for breach of that obligation must be determined in light of the relationships between the government and the particular tribe."

*Navajo Tribe of Indians v. United States*, 624 F.2d 981, 988 (Ct. Cl. 1980). The tribal trust doctrine was established by Justice Marshall in *Cherokee Nation v. Georgia*. In that

case the Supreme Court classified tribes as Domestic Dependent Nations, and analogized the relationship of the Tribes the U.S. as that of a ward to a guardian. The Marshall Court provided the original language that led to the Tribal Trust Doctrine by stating:

> It may well be doubted whether those tribes which reside within the acknowledged boundaries of the United States can with strict accuracy be denominated foreign nations. They may more correctly perhaps be denominated domestic dependent nations. They occupy a territory to which we assert a title independent of their will, which must take effect in point of possession when their right of possession ceases-meanwhile they are in a state of pupilage. Their relations to the United States resemble that of a ward to his guardian. They look to our government for protection; rely upon its kindness and its power; appeal to it for relief to their wants; and address the President as their great father.

*Cherokee Nation v. Georgia* 30 U.S. 1, 15 (1831). The ward guardian terminology coined by the Marshall Court provided the basis for the development of the tribal trust doctrine. Since, Congress has placed a fiduciary-like trust responsibility on the government in its dealings with Native Americans. In *Seminole*, the Supreme Court defined this trust responsibility by holding, "The federal government has charged itself with moral obligations of the highest responsibility and trust. Its conduct, as disclosed in the acts of those who represent it in dealing with the Indians, should therefore be judged by the most exacting fiduciary standards." *Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1941).

The Federal Defendants cite *Gros Ventre Tribe v. United States* to show that unless there is a specific duty placed on the government with respect to Indians, the responsibility is discharged by the agency's compliance with general regulations and statutes. The Court in *Gros*

*Ventre* states that "without an unambiguous provision by Congress that clearly outlines a federal trust responsibility the courts must appreciate that whatever fiduciary obligation otherwise exists, is a limited one only." *Gros Ventre Tribe v. United States*, 469 F.3d 801, 812 (9th Cir. 2006). In that case the Court recognized the existence of the trust responsibility, but limits it in a fiduciary sense. Even a limited fiduciary duty, as set forth in *Gros Ventre*, still requires the BLM to recognize its trust responsibility to the Shoshone-Bannock Tribes. Violation of NEPA and the allowing further contamination to their aboriginal lands, where treaty rights still exist, does not fulfill the trust responsibility.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion for Summary Judgment.

DATED this 29th day of October, 2010.

/s/ Matt S. Echo Hawk
Matt Echo Hawk
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2010, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to the following:

| | | |
|---|---|---|
| Secretary Kenneth Salazar<br>Department of the Interior<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br>Telephone: (202) 208-7351<br>Facsimile: (202) 208-5584 | ☐<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (Fax)<br>ECF Notice |
| Director Bob Abbey<br>Bureau of Land Management<br>1849 C Street NW, Rm. 5665<br>Washington DC 20240<br>Telephone: (202) 208-3801<br>Facsimile: (202) 208-5242 | ☐<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (Fax)<br>ECF Notice |
| United States Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530-0001 | ☐<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (Fax)<br>ECF Notice |
| Thomas E. Moss, United States Attorney<br>Attention: Civil Process Clerk<br>800 Park Blvd., Suite 600<br>Boise, Idaho 83712<br>Telephone: (208) 334-1211<br>Facsimile: (208) 334-9375 | ☐<br>☐<br>☐<br>☐<br>☒ | U.S. Mail<br>Hand Delivered<br>Overnight Mail<br>Telecopy (Fax)<br>ECF Notice |

| | |
|---|---|
| Albert P. Barker<br>Paul Arrington<br>Barker Rosholt & Simpson LLP<br>1010 W. Jefferson, Ste. 102<br>P.O. Box 2139<br>Boise, Idaho 83701-2139<br>Telephone: (208) 336-0700<br>Facsimile: (208) 344-6034 | ☐ U.S. Mail<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Telecopy (Fax)<br>☒ ECF Notice |
| Terry T. Uhling<br>Sheila G. Bush<br>J.R. Simplot Company<br>999 Main Street, 13th Floor<br>P.O. Box 27<br>Boise, Idaho 83707-0027<br>Telephone: (208) 389-7317<br>Facsimile: (208) 389-7464 | ☐ U.S. Mail<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Telecopy (Fax)<br>☒ ECF Notice |
| David H. Maguire<br>MAGUIRE & PENROD<br>1414 e. Center – P.O. Box 4758<br>Pocatello, Idaho 83205-4758<br>Telephone: (208) 232-5167<br>Facsimile: (208) 232-5181 | ☐ U.S. Mail<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Telecopy (Fax)<br>☒ ECF Notice |

/s/ Matt S. Echo Hawk
for ECHOHAWK LAW OFFICES

H:\WDOX\CLIENTS\0001\0359\00036997.DOC