IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
CHARLES FINDLAY, Assistant Chief
Natural Resources Section
AYAKO SATO, Trial Attorney
ayako.sato@usdoj.gov
DC Bar #: 977669
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
(P) (202) 305-0239
(F) (202) 305-0506

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHOSHONE-BANNOCK TRIBES OF THE FORT HALL RESERVATION, | Case No. 4:10-CV-4 |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| UNITED STATES DEPARTMENT OF THE INTERIOR; AND UNITED STATES BUREAU OF LAND MANAGEMENT, | |
| Defendants, | |
| and | |
| J.R. SIMPLOT COMPANY, | |
| Defendant-Intervenors. | |

**INTRODUCTION**

In their opening brief, Dkt. No. 50-1 ("Defs.' Br."), Federal Defendants established that the Bureau of Land Management ("BLM") complied with the National Environmental Policy Act ("NEPA") and the Federal Land Management and Policy Act ("FLPMA") and that BLM did not violate any trust duty to Plaintiff. Namely, Federal Defendants showed that the BLM took a "hard look" at the environmental impacts of the land exchange and any potential phosphogypsum stack ("gyp-stack"), which is well documented in both the Pre-decisional Environmental Assessment and the Final Environmental Assessment ("EA"). The BLM actively engaged Plaintiff in the NEPA process by inviting Plaintiff to meetings, soliciting Plaintiff's input on the Pre-decisional and Final EAs, and informing Plaintiff of the latest developments regarding the land exchange. Indeed, the Final EA was expanded to address the concerns raised by Plaintiff. The BLM determined that the land exchange was in the public interest because the BLM would acquire lands that are important for mule deer winter range and for recreational uses. BLM's conclusion that the land exchange would not cause a significant impact and that it would be in the public interest is supported by the administrative record, and Plaintiff's general grievance over the land exchange does not diminish this fact.

In its opposition brief, Dkt. No. 55 ("Pl.'s Opp. Br."), Plaintiff by and large repeats the same arguments made in its opening brief and continues to conflate the issues involving the Eastern Michaud Flat Superfund Site with those of the land exchange. The purpose of the BLM's environmental analysis is to determine whether the land exchange will have a significant impact on the human environment. As demonstrated in Federal Defendants' opening brief and below, the BLM appropriately determined that the land exchange would not cause any significant impact. The fact that the land to be acquired by the J.R. Simplot Company

("Simplot") through this land exchange is part of a Superfund Site does not necessarily trigger the need for an Environmental Impact Statement ("EIS") as Plaintiff seems to suggest. For the reasons stated below, this Court should deny Plaintiff's motion for summary judgment and grant Federal Defendants' cross-motion for summary judgment.

## ARGUMENT

### I. Plaintiff Misconstrues the Level of Deference That Must Be Afforded to the BLM

Without citing to any authority, Plaintiff argues that this Court should not defer to the BLM's expertise with regard to its NEPA analysis because the BLM does not have special expertise in the area of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERLCA"). *See* Pl.'s Opp. at 4. Plaintiff's assumption that BLM's examination of environmental effects of the land exchange under NEPA requires CERCLA expertise is misplaced. In the instant case, the BLM appropriately relied upon its experts and determined that the land exchange would not result in any significant environmental impact. BR 310. The BLM employed a variety of different experts in the areas of archeology and environment and natural resources to analyze the potential impacts of the land exchange and possible future gyp-stack. *See* BR 343 (identifying Realty Specialists, Archaeologists, Environmental Protection Specialists, Natural Resource Specialists, and a Wildlife Biologist as preparers of the Final EA); BR 536, 537, 596 (documenting the Senior Mining Engineer's further investigation into the impacts of a potential gyp-stack in response to Plaintiff's comments on the Pre-decisional EA). The BLM's conclusions deserve deference. *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc); *Anderson v. Evans*, 371 F.3d 475, 489 (9th Cir. 2004).

Plaintiff offers nothing to suggest that BLM's expertise *with regard to the land exchange* is not entitled to deference.

## II. BLM Is Not Required to Prepare an EIS

Plaintiff mischaracterizes Federal Defendants' explanation of plaintiff's burden in asserting a NEPA violation. Federal Defendants have not asserted that Plaintiff has the burden to show that significant environmental impacts will in fact occur. However, Plaintiff does have the initial burden as the moving party to show that there is some deficiency in the NEPA analysis. *See Inland Empire Pub. Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 764 (9th Cir. 1996) ("Plaintiffs have advanced no proof why this [NEPA] decision is arbitrary and capricious, as is their burden."). Nor is it relevant that Federal Defendants' cited authority involves an EIS rather than an EA, as Plaintiff asserts. Pl's. Opp. Br. at 5. Regardless of whether the challenge is to an EA or an EIS, the initial burden still falls on Plaintiff. *See Akiak Native Community v. U.S. Postal Serv.*, 213 F.3d 1140, 1146 (9th Cir. 2000) ("To succeed in their challenge [to the EA], Plaintiffs must demonstrate that the Postal Service failed to 'articulate a rational connection between the facts found and the conclusions made.'" quoting *Or. Natural Res. Council v. Lowe*, 109 F.3d 521, 526 (9th Cir. 1997)).

Once Plaintiff raises a substantial question with regard to a NEPA deficiency, the burden then shifts to the agency. Plaintiff's authority is consistent with this proposition. *W. Land Exch. Project v. U.S. Bureau of Land Mgmt.*, 315 F. Supp. 2d 1068, 1087 (placing initial burden on plaintiff to raise substantial questions that the proposed action may have a significant impact); *Sierra Club v. U.S. Forest Serv.*, 843 F.2d 1190, 1193 (9th Cir. 1988) (placing initial burden on plaintiff to allege facts that would demonstrate the proposed action "may significantly degrade some human environmental factor"). As explained in Federal Defendants' opening brief and below, Plaintiff did not met its initial burden to explain how BLM's NEPA analysis is flawed.

Plaintiff continues to focus on the existing contamination on the offered land and suggests that this fact alone necessitates the preparation of an EIS. Pl.'s Opp. Br. at 6 ("The parties do not dispute that there are known environmental hazards at the Superfund site which includes the selected exchange lands."). The fact that the offered lands are part of a Superfund site does not automatically trigger the need for an EIS. Rather, the BLM is required to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Here, the proposed action is the land exchange. The BLM prepared an EA analyzing the impacts of the land exchange and potential future gyp-stack, determined that significant impacts would not result, and appropriately issued the Decision Record/Finding of No Significant Impact ("DR/FONSI"). *See* BR 307-310. Plaintiff's suggestion that the BLM should have prepared an EIS simply because the selected lands are on a Superfund site is not supported by law.

Selectively taking portions of the Final EA out of context, Plaintiff argues that because the Final EA acknowledges that liner punctures or seam seepage is a possibility, the BLM was required to prepare an EIS. Pl.'s Opp. Br. at 6. However, the Final EA shows that the BLM determined that punctures or seepage from a lined gyp-stack would be unlikely. BR 339 ("Failure of a new gyp-stack would not be expected to occur if proper engineering design including internal water drainage provisions is conducted."); BR 340 ("Impacts should be within regulatory standards and would not create a 'release of hazardous materials' under CERCLA if the proponent properly designs, constructs, and operates the facility with a liner and according to technology which is currently available and utilized at comparable sites within the United States."); *id.* ("A new gyp-stack containing a liner, internal drainage, and proper water

management would have *little or no seepage* or transport of contaminants from phosphogypsum waste into shallow ground water."(emphasis added)).

In *Akiak Native Community v. U.S. Postal Service*, plaintiffs argued that the agency's NEPA analysis was flawed because the EA stated that the proposed action "could" or "may" result in some impacts. 213 F.3d at 1146. The court found that when the EA was evaluated as a whole, the court could "not conclude that there were substantial questions whether those impacts would occur and be significant" even though the EA discussed the possibility of some impacts. *Id.* Similarly here, Plaintiff's single quote from the Final EA does not amount to a showing that significant impacts may occur. Indeed, cherry-picking select areas of the EA to demonstrate the possibility of impacts is insufficient to raise "substantial questions" regarding the need for an EIS. *See Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1240 (9th Cir. 2005) (declining to find that substantial questions were raised in support of the claim that the proposed project may have a significant effect where plaintiff seized upon "various bits of information and data in the . . . NEPA documents").

Finally, Plaintiff argues that because it has raised numerous concerns in the past, Plaintiff has sufficiently raised a substantial question as to the significant effects of the land exchange. Pl.'s Opp. Br. at 6. Such bald assertions without more are insufficient to demonstrate that a substantial question exists. *C.f. Humane Soc'y of United States v. Gutierrez*, 625 F. Supp. 2d 1052, 1069 (D. Or. 2008) (finding that plaintiffs failed to raise substantial questions regarding the need for an EIS where plaintiffs simply alleged that the proposed project was controversial); *see also Defenders of Wildlife v. U.S. Fish & Wildlife Serv.*, No. Civ. 01-934-HA, 2001 WL 34041842, at *4 (D. Or. July 3, 2001) (finding that plaintiffs failed to raise substantial questions

where plaintiffs made general allegations that the take of five percent of nestling peregrine falcons rose to the level of significance without any evidence in support of this claim).

In sum, BLM appropriately concluded that an EIS was unnecessary, and Plaintiff has not offered anything to rebut this conclusion.

### III.   BLM's Cumulative Impacts Analysis Satisfies NEPA

Plaintiff again mischaracterizes Federal Defendants' argument.  Federal Defendants have not stated that it is Plaintiff's burden to demonstrate how cumulative impacts would occur. *Compare* Pl's. Opp. Br. at 6 *with* Defs.' Br. at 17 ("Plaintiff has failed to meet its burden in demonstrating that the BLM cumulative impacts analysis is flawed.").  Rather than point to any deficiency in the cumulative impacts analysis, Plaintiff argues that the "aggregate effects" approach to the cumulative impacts analysis is only applicable to EISs.  The "aggregate effects" approach has been upheld by courts within the Ninth Circuit for EAs as well as EISs.  *Bark v. U.S. Bureau of Land Mgmt.*, 643 F. Supp. 2d 1214, 1227-28 (D. Or. 2009); *Conservation Nw. v. U.S. Forest Serv.*, No. CV-05-0220-EFS, 2005 WL 2077807, at \*7 (E.D. Wash. Aug. 26, 2005). Here, the BLM has adequately analyzed the impacts of past actions with respect to contamination from the existing gyp-stack in the aggregate form, *see* BR 321-23 (discussing the elevated levels of heavy metals on the selected lands and the potential effects of site-related contamination); BR 321 (discussing the level of airborne fluoride contaminants resulting from an existing cooling tower); BR 335-36 (discussing existing air quality and groundwater impacts and hazardous waste contamination on selected lands), and Plaintiff has identified no flaw in this analysis.

Plaintiff's reliance on *Te-Moak Tribe of Western Shoshone of Nevada v. U.S. Department of the Interior*, 608 F.3d 592 (9th Cir. 2010), merely supports the established principal that

6

Plaintiff has the initial burden of showing a flaw in the cumulative impacts analysis. Plaintiff has failed to meet this burden as it has yet to identify any past, present, or reasonably foreseeable action that the BLM failed to consider in its NEPA analysis.  *See* Pl.'s Opp. Br. at 6-8.

### IV. The BLM's Public Interest Determination Is In Compliance With FLPMA

Plaintiff does not cite any authority to support its argument that the BLM violated FLPMA.  Pl.'s Opp. at 8-9.  Instead, Plaintiff contends that because the BLM allegedly violated NEPA, the BLM also violated FLPMA.  *Id.*  First, this argument is flawed because, as demonstrated above, the BLM did not violate NEPA.  Second, there is no authority to support the proposition that a violation of NEPA automatically results in a violation of FLPMA.

Here, the decision-maker provided a careful and detailed examination of the various resource needs and values pursuant to FLPMA, which is well documented in the DR/FONSI.  BR 307-9.  Plaintiff has presented nothing to suggest that the BLM's public interest determination was not well-reasoned or unsupported by the record.  The Secretary is entitled to deference in making his public interest determination, and his conclusions and recommendation should be undisturbed.  *Nat'l Coal Ass'n v. Hodel*, 825 F.2d 523, 532 (D.C. Cir. 1987); *Nat'l Coal Ass'n v. Hodel*, 675 F. Supp. 1231, 1244-45 (D. Mont. 1987).

### V. Federal Defendants Have Not Breached Any Trust Responsibility

Plaintiff disregards well-settled Ninth Circuit law, which is directly on point, and instead relies on *Navajo Tribe of Indians v. United States*, 224 Ct. Cl. 171 (1980), a case decided by the Court of Claims involving accounting claims.  *Navajo Tribe of Indians* is inapplicable because it did not address the issue of whether the government breached its trust obligations in the execution of general environmental statutes, which is at issue in the present case.  Plaintiff's other cited authority is equally inapposite.  Decisions after *Cherokee Nation v. Georgia*, 30 U.S.

1 (1831) and *Seminole Nation v. United States*, 316 U.S. 286 (1941) have consistently emphasized that the government does not owe a fiduciary duty beyond complying with generally applicable statutes and regulations. *Gros Ventre Tribe v. United States*, 469 F.3d 801, 810 (9th Cir. 2006); *Morongo Band of Mission Indians v. F.A.A.*, 161 F.3d 569, 574 (9th Cir. 1998); *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995); *Vigil v. Andrus*, 667 F.2d 931, 934 (10th Cir. 1982). As demonstrated above, the BLM has fully complied with NEPA and FLPMA and thus, Plaintiff's breach of trust claim is without merit.

Unlike Plaintiff's cited authority, *Gros Ventre Tribe v. United States*, 469 F.3d 801 (9th Cir. 2006) is applicable to the present case. In that action, the court addressed whether the government owed a specific trust obligation to the Gros Ventre Tribe in the face of the government's duty to approve, permit and reclaim mining operations under applicable law. *See* 469 F.3d at 805-6. The court rejected any notion that the government owed a specific trust duty where the government's only obligation is to comply with applicable regulations and statutes. *See id.* at 810. Plaintiff reads *Gros Ventre Tribe* as recognizing a limited fiduciary duty placed on the government even in the absence of a specific regulation or statute. Even if that were so, the court noted that it could not enforce any general or limited trust obligation allegedly owed by the government because the court has "no way of measuring whether the government is in compliance, unless [it] look[s] to other generally applicable statutes or regulations." *Id.* at 812. The court reiterated that even if the government owes a general trust responsibility, "this responsibility is discharged by the agency's compliance with general regulations and statutes not specifically aimed at protecting Indian tribes." *Id.* (quoting *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 574 (9th Cir. 1998)).

Because the BLM has fully complied with NEPA and FLPMA, the BLM has not breached any trust obligation, specific or otherwise, to Plaintiff.

## CONCLUSION

For the foregoing reasons, Federal Defendants respectfully request that their cross-motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

Respectfully submitted on this 19th day of November, 2010,

        IGNACIA S. MORENO
        Assistant Attorney General
        United States Department of Justice
        Environment and Natural Resources Division
        CHARLES FINDLAY, Assistant Chief

        /s/ *Ayako Sato*
        AYAKO SATO, Trial Attorney
        Environment and Natural Resources Division
        Natural Resources Section
        Ben Franklin Station, P.O. Box 663
        Washington, D.C. 20044-0663
        Tel: (202) 305-0239
        Fax: (202) 305-0506

        Attorneys for Defendants